Good morning. May I please the court, Kenneth Triano on behalf of Lizbeth Gutierrez. Could I reserve two minutes for rebuttal? You may do so, counsel. Just watch the clock as it counts down. Thank you. We raised two general areas on appeal, the first being the Brady issue where the government suppressed impeachment evidence that was favorable to the defendant in this case. The term suppression needs some interpretation, I believe, in this case. The government did provide something, but it was delayed until after their witness had been examined on direct. And also the information that was given to us was not actually the Henthorne material. What it was was a highly sanitized version of what another AUSA in an earlier case had come upon. There was no, I've received Henthorne material in cases before, and usually there's witness statements, there's reports. In this case, it doesn't even say the name of the case in which the chemist was disciplined, and it doesn't mention the name of the supervisor. So it left really the defense with nothing to work with at that point in time. And the government, I think they mentioned in their arguments that, well, the defense should have asked for a continuance. But I don't think it's reasonable under the circumstances of being in trial, especially for a sole practitioner being in trial and dealing with lots of things going on, to ask them to request a continuance. The district court is saying, well, we'll give you five more minutes to think about this. That's mentioned twice in short notice during the case. Could you address Reester's supplemental briefing on the Jefferson issue? And you conceded that that forecloses the line of argument you were making on a lien. But you raised this argument based on a new argument now, based on McFadden. Was that an argument that you advanced in the court below? We advanced it in that we argued that the instruction given by the district court was overly broad, in that it said the defendant had to know it was methamphetamine or some other prohibited drug. And then the instruction also said sufficient that the defendant knew it was some kind of prohibited drug. So we're arguing that that portion was too broad by focusing on the lien issue. But still, that language, I think, is covered by the holding in McFadden. I don't also don't believe that we ---- But doesn't Jefferson resolve that? No. Jefferson, I think, is too much may be read into Jefferson. Jefferson deals with a person who actually waived his right to have a jury determine facts in his case and also accepted the ---- when the magistrate took his plea, accepted what the elements were. And the elements were what was ultimately found on appeal to be the elements of the offense. But Jefferson relies on the Carranza case, and the Carranza case really just gave very short service to the Apprendi argument. In Carranza, they said Apprendi doesn't apply because the person was sentenced below the maximum sentence. But Blakely v. Washington shows that that's not necessarily the final word. A person could be sentenced based on factors that raise the guideline range, which in essence raises the maximum sentence. But just sentencing below the maximum sentence isn't enough to preclude the Apprendi argument. But really, the bottom line is they didn't address Apprendi because they didn't feel it applied. I want to make sure I understand what your argument is. So your argument is that in the judge's instructions that he used the term prohibited drug and the statute uses the term controlled substance, is that your argument? Yes, that's our argument. And what's the difference between those two? Well, Justice Thomas found that there was a significant difference between those two in that in McFadden, the government argued that they argued for a standard that the defendant knew he was dealing with an illegal or regulated substance. And that that's too broad because it takes into account not only drugs that are lower on the schedules than a Schedule II substance, which Gutierrez was charged with, but also takes into account any other type of drug. For example, something that's not approved by the FDA cannot be imported. Or a listed precursor chemical also would be a drug that would not fall under the Controlled Substances Act, at least not the provisions with which she was charged, 952 and 960. I think under the jury instruction that was given, the jurors could have found her guilty simply because they thought she knew she was bringing in something illegal. And that definitely does not meet with what Justice Thomas said in the McFadden case. So even though McFadden doesn't address Apprendi issues, it does address the possibility of the overbroad application of the mens rea element in this case. And I think the government has not challenged. I don't believe in this case that the record supports, for example, that this could be considered harmless beyond a reasonable doubt, because there was no facts entered at all into the record during the trial that showed that Gutierrez knew there was methamphetamine or any other drug. It was strictly based on the government's argument, which came from the chemist's testimony through their valuation expert, saying that people would never trust somebody with that valuable of a load. But there's no negotiations, there's no discussions about marijuana or cocaine or methamphetamine at all. There's no discussions of any drug in the case that were done in the presence or to the knowledge of Gutierrez. Counsel, you specifically in your supplemental brief invoked McFadden. That was decided in June of this year. You didn't file a 28J letter to suggest that this was an alternate path to relief? Well, McFadden and Jefferson came, I think, just a week or two apart. So I was considering the McFadden issue, then Jefferson came out, and it took me a while to digest the two cases and try to synthesize them. So that's why I raised McFadden. And also Jefferson does, in the concurrence, they do reference McFadden, and I don't think that really deals with it head-on in this context the way I've argued it, because Jefferson actually conceded that some of the prohibited drug was an element of the offense, which they don't discuss this in McFadden. I mean, excuse me, in the Jefferson concurrence or Jefferson anywhere, for that matter. But I do think that that is an issue that distinguishes the two cases. When you have someone who waives a jury determination and agrees to the elements, it's distinguishable from a case where somebody can test both elements. And I do want to just conclude that, before I run out of time, that the government in this case did not argue that there was harmless error. I don't think it's harmless beyond a reasonable doubt, but I think if they don't raise that issue that it's waived on appeal. Thank you, counsel. You may reserve the rest of your time. We'll hear from the government. Yes, sir. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, there was no Brady violation in this case because there was no suppression. The United States turned over the impeachment material about its chemist. The question, of course, is whether it's timely and complete. Yes, Your Honor. In this case, the United States, unfortunately, did not understand that it would need to call this chemist until the very first morning of trial. When we contacted him over the lunch break, it turned out he had a family emergency and was leaving town, and we were essentially forced to call him as one of the very first witnesses in the case. As a result, the material wasn't turned over to the defense counsel until after the witness had completed direct examination. That having been said, the standard is whether it was still turned over at a time where it was of use to the accused. In this case, the defense counsel used the material on cross-examination, and he argued it in closing argument. Moreover, the court, when this first came up, gave the defense counsel an opportunity to delay the proceedings. He indicated that he would have liked to obtain some sort of expert to review the material. The court said, you know, we can help you out with that. And notably, this same argument was raised by defense counsel four months after the end of trial. He filed a renewed Rule 29 motion, made the same argument, which is essentially that I didn't have enough time to get an expert to review this, to help me understand how I could have used this on cross-examination. But even four months after that fact, the defense counsel made no effort to find an expert, to sort of develop what it is exactly that prejudiced him by receiving this at that late date. Is that required, that he has to go out after the barn door has been shut and try and get it reopened by doing the preparation that he said he didn't have time to do when the trial was still in progress? Well, I think if the court addresses the defense and says, explain to me how you're prejudiced by this late discovery, and the only real response to that question is, well, maybe there's someone else out there that could explain it better, I think then, yes, if that's your only answer is someone else could explain it, then you have to find that other person or you haven't shown prejudice. Your opposing counsel, Mr. Troiano, says that whatever it is you did give was not complete. There were missing parts, if I heard him correctly. Yes, and I'm not sure that that argument was really raised or developed below, but I know that in this case we sent a request to the sort of Washington, D.C., Henthorne, through the Henthorne process and received back a summary of what was in this defendant's personnel file. I don't think there's a rule that the entire file or the actual documents from the file be turned over to the defense, and this was, if you look in the excerpts of the record, it's a pretty detailed description. It's not the defendant's personnel file, it's the witness. Excuse me, the chemist's personnel file. Chemist, okay, that's what I thought. It's a fairly detailed account of precisely what this letter of reprimand was, and it's a somewhat technical violation that this chemist committed, but I don't think there's anything to suggest that there's more, something missing that wasn't turned over in the summary of what was in the letter of reprimand. Did you address the McFadden issue? Yes, Your Honor. I'm not sure that I totally understood the defendant's argument as to how that fits into the Jefferson decision. It's our position that Jefferson squarely addressed both of the arguments under Aileen and under the statutory interpretation that this defendant raised in his brief. Jefferson held unequivocally that the knowledge of the type and quantity of drugs is not an element of the offense, and that's controlling. Well, I thought, though, that he was now making a new argument, that McFadden, even if Jefferson forecloses the claim, McFadden because it, by analogy, calls into question the validity of the jury instruction to the extent it said methamphetamine or some other prohibited drug, and that is another flaw invoking McFadden. Well, Your Honor, I think the issue in McFadden was separate from the issue here, and that was a question of whether the government was required to prove under the definition of controlled substance whether an analog could fit that definition. I don't think that that analysis carries over to the 960 charges here. And as Your Honor has noted, McFadden was discussed in Jefferson, so to the extent that it was somehow undercut the panel's decision, I don't think that's supported by the decision in Jefferson. Anything further, counsel? No, unless you have any other questions. No questions. Thank you, counsel. Mr. Toriano, you have some reserve time. Thank you, Your Honor. Regarding our motion to strike, which would have resulted in, I believe, a Rule 29 being granted in this case, either during the trial or post-trial, discretion exercised to an end not justified by the facts is an abuse of discretion, and I think in this case that is what happened because the government had spin control over the facts of this Brady material. They decided when to release it. It was released after the direct examination, and they released what they chose to release, which was a letter written by another assistant U.S. attorney. Counsel, it may be hardball, but is it illegal under our statute? I mean, under our rules? Well, I think it's, is it fair? And I think that the judge did not fully grasp the facts and even defense counsel during the trial until after with the Rule 29 motion didn't really see what even could be read into the letter, which wasn't truly full disclosure of Henthorne. The district court said nothing else could have been done with it, but I think you can see that that was said during the trial. After the trial, when we filed our Rule 29 motion, you can see that something more could be done with it. What could you have done with it? What makes it material? What makes it material is that the chemist didn't forget something. The chemist forgot something, was told to correct it, and then fudged it and got caught and somebody else had to fix it for him. He basically lied about whether he weighed the drugs, and in that case we don't even know how serious the supervisor who re-weighed the drugs. And this had been how many years before your trial? I think six years, which to me actually makes it scarier from the defense perspective because the witness testified this had never been asked of him of 175 times he's testified. So that means no one's ever had it before. Did you get a chance to cross-examine the chemist? During the trial, yes, but I frankly didn't until we filed our Rule 29C after the case was essentially decided by the jury. Didn't really see exactly what it was, and that was the advantage. Did you get to ask the chemist about this prior incident? I was given an opportunity to cross-examine him. I don't feel that I had the opportunity to do it correctly. Did you have the Brady material in possession, in your possession at that time? I still don't have the Brady material. Did you have the material the government provided on the chemist? I had the two-page letter. Did you ask him about it? I asked him about being disciplined if he had been questioned about it. Did you have a chance to ask him whether he had repeated any of those errors in your client's case? I wasn't sure what the errors were because I didn't have a chance to question his supervisor. I didn't even know what the drug was in that case. The fact that his supervisor re-weighted it was just a tenth over a kilogram of heroin. A tenth over a kilogram makes me think that it might have been heroin. It was originally released, that letter under seal, in a heroin case. Did you have a chance to ask him what methods he used in your client's case? I had an opportunity to cross-examine him. But I don't feel I had an opportunity to digest the material and follow up on it. And there's no way you can get an expert on an issue like this in the middle of trial in the middle of night. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in United States v. Moscovia.
judges: O'scannlain, Fisher, Bybee